The German National Bank of Little Rock, Respondent. v. Oliver L. Geer, James C. Hutchinson and Moritz Lippman, Doing Business under the Firm Name and Style of O. L. Geer & Co., Defendants; James C. Hutchinson, Appellant.— Judgment affirmed, with costs.—Appeal from a judgment entered after a trial by the court without a jury.— PER CURIAM : The judgment in this action must be affirmed, under the rule laid down in the case of *Madison Square Bank* v. *Pierce* (137 N. Y. 444). The judgment is, therefore, affirmed, with costs. Present ·— Van Brunt, P. J., Barrett, Rumsey, Patterson and O'Brien, JJ.

Annette B. Wetmore (now Annette B. Markoe), Appellant, v. William Boerum Wetmore, Respondent, Impleaded with Others.— Appeal dismissed, without costs —Appeal from an order denying the plaintiff's motion for a reargument.— PER CURIAM : In view of the decision made upon the appeal from the order modifying the judgment herein (*ante,* p. 230), it is unnecessary to consider the appeal from the order denying the motion for reargument. That appeal is, therefore, dismissed, without costs to either party. Present — Van Brunt, P. J., Rumsey, Patterson, O'Brien and Ingraham, JJ.

The National Suspender Manufacturing Company, Appellant, v. Russell H. Hoadley and Others, Respondents.—Judgment reversed, new trial ordered, costs to appellant to abide event.— PER CURIAM: This case involves precisely the same question as the case of *Isear* v. *Hoadley,* decided at this term (*ante,* p. 161), and, for the reasons stated in that case, the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event of the action. Present — Van Brunt, P. J., Barrett, Rumsey, Ingraham and McLaughlin, JJ.

Albert Lowery, an Infant, by Isaac M. Lowery, his Guardian ad Litem, Appellant, v. New York Ice Company, Respondent.—Judgment affirmed, with costs.—Appeal from a judgment dismissing the complaint after a trial at Trial Term.— PER CURIAM: As no exception appears in the record, there is nothing for us to review. The judgment is affirmed, with costs. Present— Van Brunt, P. J., Barrett, Rumsey, Ingraham and McLaughlin, J J.

Enoch L. Fancher, Plaintiff, v. Anna D. Bonfils and Others, Defendants. Ruel W. Poor, as Trustee for the Garfield National Bank, Claimant, Appellant, v. Jacob A. Zimmermann, Claimant, Respondent. — Order affirmed, with costs.—Appeal from an order confirming a referee's report in surplus-money proceedings.— PATTERSON, J.: This appeal is from a final order awarding certain surplus moneys arising from the sale of real property under a decree of foreclosure to Mr. Zimmermann, one of the claimants. The other claimant is Mr. Poor, trustee for the Garfield National Bank. The controversy between these claimants arises out of peculiar and somewhat complicated dealings respecting mortgages and liens upon a tract of land situate on One Hundred and Seventy-ninth street, between Webster and Vanderbilt avenues, in

the city of New York. In 1896 the land was owned by Mr. Bonfils. It appears to have been separated into a number of independent parcels of irregular shapes and dimensions, and marked on a map contained in the record as parcels A, B, C, D, E, F and G. On the 10th of January, 1896, Mr. Bonfils entered into a contract with one Francisca Moskoski to sell to her so much of the tract as from the description of the premises in the contract lies within the lines of parcels A, B and E. In that contract it is stated that the premises to be conveyed to Moskoski are subject to mortgages amounting to $9,000. It would seem that in this transaction Moskoski acted for and was the representative of Zimmermann; at all events, Moskoski subsequently conveyed the premises to Zimmermann. The consideration of the conveyance to Moskoski was that she gave in exchange to Bonfils certain premises in West Fifty-first street in the city of New York, and, in addition thereto, a mortgage for $7,000 on other premises in West Fifty-first street; but it seems that that mortgage was turned into money, and $6,300 was given to Mr. Bonfils instead of the mortgage. At the time this transaction took place Mr. Poor, as trustee, held a mortgage originally for $46,000, which covered the whole tract, but which, at the time of these proceedings, was reduced to the principal sum of $7,700. Mr. Jackson held another mortgage on the whole premises. There were also liens to a considerable amount on the whole tract for unpaid taxes and assessments. Plot A appears to have been subject to a mortgage of $4,500. Parcel B was subject to another mortgage for $6,500, and that mortgage also covered plot C. That is the mortgage foreclosed in this action and from the sale under the decree of foreclosure of which the surplus arises. Plot E was subject to a mortgage for $4,800, and that mortgage was also a lien upon plot F. It appears that with the incumbrances on the property in this situation, an agreement was made between Bonfils and Moskoski by which such incumbrances should be rearranged and the rights of the parties reconstituted under them. Mr. Poor and Mr. Jackson became assenting parties to this rearrangement, and they agreed to and did release from the liens of their respective mortgages the parcels to be conveyed to Moskoski. Mr. Poor testified in this proceeding that he did so at the invitation of Mr. Bonfils, and that the inducement to him to give the release was an agreement to apply the $6,300 above referred to to the payment of the outstanding taxes and assessments, which amounted to $5,500, and the application of the balance of the $6,300, viz., $800, to the diminution of the indebtedness represented by his mortgage. The transaction was consummated and a conveyance made to Moskoski whereupon the taxes and assessments were paid in full and the balance of $800 was given to Mr. Poor to apply on the mortgage. It had been further agreed between the holders of the Fancher (then called the Miller) mortgage that parcel B should be relieved from the lien of that mortgage on the payment of $2,400 and taxes within one year, and the holder of the $4,800 mortgage agreed to release plot E from the lien of that mortgage on the payment of $2,100 and taxes within a year. Mr. Poor associated himself with that arrangement and became bound by it. He consented to and requested the execution of the agreements by which the holders of the mortgages referred to agreed to. the apportionment. All the agreements were put upon record, including releases of the premises con-